UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD LEE JOHNSEN,

                            Plaintiff,

        v.

DON MCDERMOTT, et al.,

                            Defendants.

Case No. C19-0058-MJP-MAT

REPORT AND RECOMMENDATION

## I.        INTRODUCTION

Plaintiff is a pretrial detainee at the Skagit County Jail who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action.  He alleges that defendants, Corrections Officers Leland Harlan and Gabriel Gomez, violated his constitutional rights by failing to protect him from another inmate.  Currently before the Court is defendants' motion for summary judgment,[1] which plaintiff opposes.  Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that defendants' motion for summary judgment be GRANTED in part and DENIED in part, as explained below.

---

[1] Defendants label their motion a "motion to dismiss" but acknowledge they rely on evidence outside the pleadings and therefore are seeking summary judgment.  (*See* Dkt. 29 at 2-3.)

REPORT AND RECOMMENDATION - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## II.    BACKGROUND

A.    Facts[2]

At 4:10 p.m. on January 1, 2019, plaintiff was spending his two hours of liberty time in the K-pod day room at the Skagit County Jail.  (Dkt. 38 at 1; Dkt. 30 at ¶¶ 2-5.)  Ryan Beazizo was the only other inmate in the room.  (Dkt. 30 at ¶ 4.)  At approximately 4:11 p.m., Officer Harlan entered the day room to speak with plaintiff.  (*Id.* at ¶¶ 2-3.)  Officer Harlan and plaintiff met in the middle of the room, at which time plaintiff heard Mr. Beazizo start yelling at Officer Harlan. (Dkt. 38 at 2; Dkt. 30 at ¶¶ 6-8.)  Officer Harlan used his radio microphone to call for assistance. (Dkt. 38 at 2; Dkt. 30 at ¶ 8; Dkt. 15 at 1; Dkt. 16 at 1.)  He did not attempt to exit the room.  (Dkt. 38 at 2.)  At 4:11:35 p.m.[3], Mr. Beazizo began walking very quickly toward Officer Harlan, yelling, "[N]obody tells me to fuck off."  (Dkt. 30 at ¶¶ 9, 29.)  About ten seconds later, when Mr. Beazizo was approximately 15 feet away, he began to take a fighting stance, ignoring Officer Harlan's commands to stop.  (Dkt. 30 at ¶¶ 13-14, 30.)  Officer Harlan states,

> I began to move left and he cut me off, so I moved to the right and he began to run to cut me off.  Johnson was in between us and tried to talk Beazizo down as Beazizo said he was going to kill me.  Johnsen's presence between us and conversation with Beazizo calmed Beazizo down.

(*Id.* at ¶¶ 15-16.)  At 4:11:49 p.m., Mr. Beazizo was less than three feet away from plaintiff and Officer Harlan.  (*Id.* at ¶ 31.)  Plaintiff agrees that Officer Harlan had moved behind him, placing him between the officer and Mr. Beazizo, but adds, "Deputy Harlan grabbed ahold of my shoulders and kept moving himself from side to side . . . using my body as a shield."  (Dkt. 38 at 2; *see also*

---

[2] Where facts are disputed, the Court presents either plaintiff's version or both parties' versions.

[3] Officer Harlan was able to testify to specific times for key events because he reviewed the timestamped surveillance video of the incident.  (*See* Dkt. 30 at ¶ 1.)  Defendants did not submit the video as evidence in support of their motion for summary judgment.

REPORT AND RECOMMENDATION - 2

1   Dkt. 15 at 2; Dkt. 16 at 1-2; Dkt. 17 at 1.)  Plaintiff states that he was in danger of Mr. Beazizo

2   hurting him both physically and emotionally.  (Dkt. 38 at 2.)

3       At 4:11:57 p.m., Officer Gomez entered the pod and immediately ran over to Officer

4   Harlan.  (Dkt. 38 at 3; Dkt. 30 at ¶¶ 18, 31, 33.)  Officer Gomez attests that he "stood next to

5   Harlan and gave Beazizo direct orders to 'back up and lock down.'"  (Dkt. 31 at ¶ 6.)  According

6   to plaintiff and several inmate witnesses, Officer Gomez ran behind plaintiff and used him as a

7   shield until more officers arrived in the day room.  (Dkt. 38 at 3; Dkt. 15 at 2; Dkt. 16 at 2; Dkt.

8   17 at 2.)  Officer Harlan attests that he and Officer Gomez moved past Johnson to control Mr.

9   Beazizo at 4:12:04 p.m., and that other deputies entered the cell at 4:12:05 p.m. and quickly got

10  Mr. Beazizo under control.  (Dkt. 30 at ¶¶ 19-24, 34-35.)  At 4:12:07 p.m., plaintiff was able to

11  walk away from the incident.  (Dkt. 30 at ¶ 36.)

12      Thirty seconds elapsed between the time Mr. Beazizo began to approach Officer Harlan

13  and the arrival of the group of deputies.  There is no dispute that plaintiff was not physically injured

14  during the incident, but he claims he suffered emotional distress.  (*See* Dkt. 21 at 6.)

15  B.    Procedural History

16      Plaintiff initiated this action in January 2019.  (Dkt. 1.)  He filed his second amended

17  complaint in April 2019.  (Dkt. 21.)  He alleges that defendants violated his constitutional rights

18  when they failed to keep him safe from Mr. Beazizo.  (*See id.* at 6.)  He seeks declaratory and

19  injunctive relief, and compensatory and punitive damages.  (*Id.* at 7-8.)

20      After the Court issued a pretrial scheduling order, defendants moved for summary

21  judgment.  (Dkt. 29.)  Plaintiff filed a response indicating that he was unable to access the legal

22  research kiosk at the jail, and the Court granted him additional time to file a supplemental response.

23

1    (Dkts. 36, 37.)  Plaintiff then submitted a declaration and supplemental response.  (Dkts. 38, 39.)

2    Defendants filed a reply.  (Dkt. 40.)

3                            III.    LEGAL STANDARDS

4    A.    Summary Judgment

5            Summary judgment is appropriate when the "movant shows that there is no genuine dispute

6    as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

7    56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The central issue is "whether

8    the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

9    one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

10           The moving party bears the initial burden of showing "that there is an absence of evidence

11   to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

12   Where the moving party does not bear the burden at trial, it can carry its initial burden by

13   presenting evidence that negates an essential element of the nonmoving party's case, or by

14   establishing that the nonmovant lacks the quantum evidence needed to satisfy its burden at trial.

15   *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Where

16   the moving party bears the burden at trial, it can meet its initial burden by presenting evidence

17   sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the

18   evidence presented must establish beyond controversy every essential element of the claim.

19   *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003).

20           If the moving party meets its initial responsibility, the burden then shifts to the nonmoving

21   party to establish a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith*

22   *Radio Corp.*, 475 U.S. 574, 585-87 (1986).  Genuine disputes are those for which the evidence is

23   such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S.

at 257.  Material facts are those which might affect the outcome of the suit under governing law.  *Id.*  A mere scintilla of evidence is insufficient to create a factual dispute.  *Id.* at 252.  Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

A verified complaint, like plaintiff's, "may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence."  *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (internal quotations omitted); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).  But allegations that are based merely on the plaintiff's belief are insufficient to oppose summary judgment, as are unsupported conjecture and conclusory statements.  *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 248.

B.    Section 1983 Standard

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally

1    participated in causing the harm alleged in the complaint.  *Arnold v. IBM*, 637 F.2d 1350, 1355

2    (9th Cir. 1981).

3                                    IV.     <u>DISCUSSION</u>

4           Defendants move for summary judgment based on qualified immunity, arguing primarily

5    that they did not violate plaintiff's constitutional rights.  They also argue that plaintiff failed to

6    establish a physical injury as required by the Prison Litigation Reform Act ("PLRA").   As

7    discussed below, the Court concludes (1) Officer Harlan is not entitled to summary judgment on

8    plaintiff's Fourteenth Amendment claim against him, (2) summary judgment should be granted in

9    Officer Gomez's favor, and (3) plaintiff's claim for damages based on emotional suffering should

10   be dismissed.

11   A.     <u>Qualified Immunity</u>

12          The doctrine of qualified immunity protects government officials from civil liability under

13   § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of

14   which a reasonable person would have known."  *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013) (per

15   curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "Qualified immunity gives

16   government officials breathing room to make reasonable but mistaken judgments about open legal

17   questions" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"

18   *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475

19   U.S. 335, 341 (1986)).  "To determine whether an officer is entitled to qualified immunity, a court

20   must evaluate two independent prongs:  (1) whether the officer's conduct violated a constitutional

21   right, and (2) whether that right was clearly established at the time of the incident."  *Castro v. Cnty.*

22   *of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (citing *Pearson*, 555 U.S. at 232).

23   Either prong may be considered first.  *Pearson*, 555 U.S. at 236.

"Jailers have a duty to protect pretrial detainees from violence at the hands of other inmates." *Castro*, 833 F.3d at 1070. Several years before the events that gave rise to this lawsuit, the Ninth Circuit held that pretrial detainees have a clearly established Fourteenth Amendment "due process right to be free from violence from other inmates." *Id.* at 1067. To establish a violation of this right, a pretrial detainee must show that the defendant was deliberately indifferent under the following standard:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. The Ninth Circuit has further explained, "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.'" *Id.* (quoted source omitted). The plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### 1. *Officer Harlan*

Defendants first argue that Officer Harlan did not make an intentional decision with respect to the conditions under which plaintiff was confined because he had no knowledge prior to entering the K-pod that Mr. Beazizo was angry at him or would threaten him. (Dkt. 29 at 7-8; Dkt. 30 at ¶ 26.) Plaintiff's claim, however, centers on the allegation that Officer Harlan used plaintiff as a shield to protect himself from Mr. Beazizo. Viewing the evidence in plaintiff's favor, the Court

REPORT AND RECOMMENDATION - 7

1  concludes that there is sufficient evidence to support the first element of *Castro*, namely that

2  Officer Harlan made an intentional decision with respect to the conditions under which plaintiff

3  was confined when he stepped behind plaintiff and used him as a shield from Mr. Beazizo.

4      Defendants next argue that Officer Harlan did not put plaintiff at a substantial risk of

5  serious harm because Mr. Beazizo took no action toward plaintiff, who was talking to Mr. Beazizo

6  to deescalate the situation.  A reasonable jury viewing the evidence in plaintiff's favor, however,

7  could conclude that using plaintiff as a shield to protect Officer Harlan from an inmate who was

8  threatening to kill him, was preparing to fight, and was only three feet away, put plaintiff at a

9  substantial risk of serious harm.

10      Defendants further argue that the third element of *Castro* is not satisfied because Officer

11  Harlan took reasonable measures to abate the risk Mr. Beazizo posed by calling for assistance and

12  then stepping forward with Officer Gomez before other deputies arrived.  Officer Harlan acted

13  reasonably when he called for help.  After, however, plaintiff claims he used plaintiff as a shield,

14  which increased, rather than abated the risk Mr. Beazizo posed to plaintiff.  Plaintiff also claims

15  that Officer Harlan had an opportunity to exit the day room but chose not to, which cuts against

16  Officer Harlan's claim that he reasonably abated the risk.  In addition, under plaintiff's version of

17  the facts, Officers Harlan and Gomez did not step forward until other deputies arrived, thus

18  negating Officer Harlan's claim that he abated the risk by stepping forward with Officer Gomez.

19      As to the final *Castro* factor, Officer Harlan argues that plaintiff did not suffer a physical

20  injury.  Plaintiff does not dispute this fact but argues that he suffered emotional distress. Deliberate

21  indifference under *Castro* does not require a showing that the plaintiff suffered a physical injury;

22  it is enough to establish exposure to a serious risk of harm and that the plaintiff suffered some

23  injury as a result.  *See Castro*, 833 F.3d at 1071 (setting forth elements of a pretrial detainee's

1   failure to protect claim); *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir.

2   2013) ("[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was

3   exposed to a substantial risk of some range of serious harms; the harm he actually suffered need

4   not have been the most likely result among this range of outcomes.").

5       Viewing the evidence in plaintiff's favor, the Court concludes that a reasonable jury could

6   find that Officer Harlan violated plaintiff's Fourteenth Amendment rights.  Because the Ninth

7   Circuit has recognized that pretrial detainees have a clearly established Fourteenth Amendment

8   "due process right to be free from violence from other inmates," *Castro*, 833 F.3d at 1067, the

9   Court recommends that defendants' motion for summary judgment on plaintiff's claim against

10  Officer Harlan be denied.

11          2.      *Officer Gomez*

12      Officer Gomez contends that his actions were objectively reasonable.  The Court agrees.

13  There is no dispute that only eight seconds elapsed between the time Officer Gomez entered the

14  day room and the arrival of other deputies.  Only five seconds elapsed between the time Officer

15  Gomez joined Officer Harlan and the arrival of other deputies.  Crediting plaintiff's testimony,

16  during these five seconds, Officer Gomez used plaintiff as a shield; then when other deputies

17  arrived, he assisted in returning Mr. Beazizo to his cell.  Even viewing the evidence in plaintiff's

18  favor, the Court concludes that plaintiff's Fourteenth Amendment claim against Officer Gomez

19  fails.  No reasonable jury could conclude that Officer Gomez failed to take reasonable measures

20  to abate the risk given that within eight seconds of him entering an unknown situation where an

21  inmate was preparing to attack a fellow officer who was backed up against a wall (Dkt. 31 at ¶ 3)

22  he ran over to stand next to Officer Harlan and then moved to take control of Mr. Beazizo.  From

23

REPORT AND RECOMMENDATION - 9

1    an objective standpoint, Officer Gomez did not act unreasonably. Accordingly, defendants'

2    motion for summary judgment on this claim should be granted.

3    B.    PLRA's Physical Injury Requirement

4        Defendants argue that plaintiff's Fourteenth Amendment claims must be dismissed under

5    the PLRA because he did not suffer a physical injury. The PLRA states: "No Federal civil action

6    may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

7    emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.

8    § 1997e(e). The Ninth Circuit has held that this provision "applies only to claims for mental and

9    emotional injury," and requires "a prior showing of physical injury that need not be significant but

10    must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002). To the extent

11    a plaintiff's claims for compensatory, nominal, or punitive damages are premised on alleged

12    constitutional violations, "and not on emotional or mental distress suffered as a result of those

13    violations, § 1997e(e) is inapplicable and those claims are not barred." *Id.* at 630.

14        There is no dispute that plaintiff did not suffer a physical injury. Because he alleges purely

15    emotional injury, there is no other basis in the record upon which to award him compensatory

16    damages. *See Carey v. Piphus*, 435 U.S. 247, 248 (1978) (holding that absent proof of actual

17    injury, only nominal damages may be awarded for constitutional violations); *Memphis Comm. Sch.*

18    *Dist. v. Stachura*, 477 U.S. 299, 308 (1986) ("the abstract value of a constitutional right may not

19    form the basis for § 1983 damages"). Accordingly, his claim for compensatory damages against

20    Officer Harlan should be dismissed. A jury, however, may award plaintiff punitive or nominal

21    damages if they find in his favor on his Fourteenth Amendment claim at trial. *See Schneider v.*

22    *County of San Diego*, 285 F.3d 784, 794-95 (9th Cir. 2002) (award of nominal damages in § 1983

23    cases is mandatory as "symbolic vindication" of a plaintiff's constitutional rights whether or not

he has been physically injured); *Oliver*, 289 F.3d at 630 (nominal damages available even if not expressly requested in complaint).

## V.    CONCLUSION

The Court recommends that defendants' motion for summary judgment (Dkt. 29) be GRANTED as to plaintiff's Fourteenth Amendment claim against Officer Gomez, GRANTED as to plaintiff's request for compensatory damages, and DENIED as to his Fourteenth Amendment claim against Officer Harlan.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 25, 2019**.

Dated this 2nd day of October, 2019.

Mary Alice Theiler
United States Magistrate Judge